FILED
2023 Dec-06  PM 12:25
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

CLAYTON SHANKLIN,   )
  Plaintiff,    )
         )
v.        )
         )  **6:22-cv-01056-LSC**
UNITED MINE WORKERS  )
OF AMERICA 1974    )
PENSION TRUST,    )
         )
  Defendant.    )

## MEMORANDUM OF OPINION

Plaintiff Clayton Shanklin ("Plaintiff") brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, *et seq.*, against the United Mine Workers of America 1974 Pension Trust ("UMWA"). Before the Court are cross motions for summary judgment. (Docs. 14, 17.) For the reasons stated below, both motions are due to be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND[1]

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057,

Plaintiff has been a worker in the coal mine industry for much of his adult life. (Docs. 17 ¶ 1, 18-1 at 4.) In 2017, he was involved in two work-related accidents. (Doc. 15 ¶¶ 12, 15.) He also suffers from, among other things, degenerative disc disease ("DDD") and chronic back pain. (Doc. 27-1 at 2.) After an Administrative Law Judge ("ALJ") for the Social Security Administration ("SSA") found that he was disabled and entitled to disability benefits, Plaintiff applied for disability pension benefits from UMWA. (Doc. 15 ¶¶ 34, 37.) UMWA denied Plaintiff's application for benefits, finding that he was not disabled as the result of a mine accident and therefore was not entitled to benefits. (*See id.* ¶ 38.)

## A. Plaintiff's medical history and work-related injuries

Plaintiff has complained of back pain since at least 2015. (Doc. 15 ¶ 1.) In 2015, Plaintiff was seen by Dr. Brasfield at least four times for issues related to his back pain. (*See id.* ¶¶ 2, 4–6.) During one such appointment, Plaintiff rated his back pain as eight out of ten with medication. (*Id.* ¶ 4.) Dr. Brasfield observed: decreased range of motion and trigger point spasms in the lumbar spine; nerve root irritation; bony overgrowth at the thoracic spine; and that Plaintiff walked with a limp favoring his left side. (*Id.* ¶¶ 2, 3.) Plaintiff was diagnosed with lumbar spondylosis

---

1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record….").

with myelopathy and hypertension. (*Id.* ¶ 3.) He received a steroid injection, narcotics, and other medication to manage his pain. (*Id.* ¶¶ 4–6.)

In 2016, Plaintiff was seen by Dr. Brasfield at least five more times for issues related to his chronic back pain. (*Id.* ¶¶ 7–11.) On July 21, 2016, Plaintiff rated his pain as eight out of ten with medication and ten out of ten without. (*Id.* ¶ 9.) On September 27, Dr. Brasfield noted that all of Plaintiff's chronic issues, including back pain, were stable. (*Id.* ¶ 10.) Plaintiff continued to receive medication for pain. (*See id.* ¶¶ 7–11.)

On January 5, 2017, Plaintiff was injured while operating a mine cart when a dip in the track caused him to be thrown into the air and land back in his seat. (Docs. 15 ¶ 12; 17 ¶¶ 3, 4; 18-4 ¶¶ 2, 3; 18-6.) The next day, Plaintiff was transported to the emergency room because he was in extreme pain and unable to walk. (Docs. 15 ¶ 13, 17 ¶ 5, 18-4 ¶ 4, 18-5 ¶ 3.) While there, he denied any recent injury or fall. (Doc. 15 ¶ 13.) X-rays revealed degeneration from L5 to S1 but no recent abnormalities or trauma. (*Id.*) Plaintiff was diagnosed with acute left side lower back pain with sciatica. (*Id.*) During a follow-up visit on January 12, Dr. Brasfield opined that Plaintiff would "need at least another two weeks off work." (Doc. 18-7 at 2.) On January 26, 2017, Plaintiff received a lumbar epidural; he returned to work sometime thereafter. (Docs. 15 ¶ 14, 17 ¶ 7.)

Less than a month later, on February 21, 2017, Plaintiff injured himself in a second workplace accident while unloading two pallets of 50-pound rock dust. (Doc. 15 ¶ 15.) Plaintiff again went to the emergency room the following morning with complaints of back pain. (*Id.* ¶ 16; doc. 18-9.) He reported a history of chronic back pain and increased pain after lifting the rock dust. (Docs. 15 ¶ 17, 18-9.) Dr. Brasfield noted that Plaintiff's back pain was "exacerbate[ed] by the stated injury." (Doc. 27-1 at 2; *see* doc. 27-7 at 5 ("I had been treating for his back pain previously. This is a new injury exacerbating that problem.").) X-rays of Plaintiff's lumbar spine on February 24 revealed mildly worsened DDD and slightly increased soft tissue density compared to an x-ray from January 21, 2013. (Docs. 15 ¶ 18, 27-1 at 2.) Plaintiff never returned to work in the mine after the February 21 incident. (Docs. 17 ¶ 8, 27-2 at 2, 27-6 at 4.)

Including emergency room visits, Plaintiff received medical attention related to his back pain at least fourteen times throughout 2017. (*See* doc. 15 ¶¶ 13, 14, 17, 18, 22–31.) On March 29, Dr. Thuss diagnosed Plaintiff with low back pain, muscle strain radiculopathy, and disc disorders but released him to work with restrictions. (*Id.* ¶ 22.) Dr. Brasfield conducted a bone density study on June 23, which showed normal results. (*Id.* ¶ 24.) Plaintiff visited the emergency room in July with complaints of increased back pain. He brought with him an outside MRI for review,

which showed multilevel lumbar spondylosis, multi-level disc bulges, and foraminal narrowing. (*Id.* ¶ 25.) On August 29, Dr. Smith opined that Plaintiff was nearing maximum medical improvement and noted that the radicular symptoms originating from the January 2017 injury had resolved. (*Id.* ¶ 26.) An MRI on September 14 revealed multilevel DDD with lateral herniations and narrowing at L4 and L5. (*Id.* ¶ 28.) A follow-up MRI scan showed severe left foraminal stenosis at L5-S1, a slipped disc, and facet arthropathy. On September 20, Dr. Prevost recommended surgery. (*Id.* ¶ 29; doc. 27-8 at 3.) On September 28, Dr. Smith found that Plaintiff had reached his pre-injury status and could return to work.[2] (Doc. 15 ¶ 30.) On December 4, Plaintiff returned to Dr. Brasfield for his chronic back pain and was prescribed narcotics. (*Id.* ¶ 31.)

In February of 2018, Plaintiff saw Dr. Brasfield again for low back pain. Dr. Brasfield scheduled Plaintiff for epidural steroid injections and twice-weekly physical rehabilitation. (*Id.* ¶ 32.) On March 14, 2018, Plaintiff met with Dr. Prevost and reported minimal function due to his pain. Dr. Prevost opined that Plaintiff was totally disabled and requested authorization for surgery. (*Id.* ¶ 33.)

## B. The Pension Plan

---

[2]     An ALJ later gave Dr. Smith's opinion "little weight" because it was inconsistent with the evidence. (Docs. 26 ¶ 10, 27-2 at 4.)

The 1974 Pension Plan (the "Plan") is administered by the Trustees of UMWA. (Doc. 17 ¶ 27.) It provides a disability pension to participants "who (a) [have] at least 10 years of signatory service prior to retirement, and (b) become[] totally disabled as a result of a mine accident." (Doc. 18-12 at 7.) The parties agree that Plaintiff meets the years of service requirement. (Doc. 17 ¶ 15.) A participant is considered "totally disabled" only if by reason of a mine accident the participant "is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor." (Doc. 18-12 at 8.)

UMWA Trustees promulgate formal interpretation materials that govern administration and interpretation of the Plan. (Docs. 15 at 20, 17 ¶ 17, 18-12 at 40.) Those materials are "binding upon all persons dealing with … benefits under th[e] Plan." (Doc. 18-12 at 40.) Two such materials are relevant here: Q&A 252 and DP-1(81).

Q&A 252 explains that three characteristics must be present to find that a worker became disabled by a mine accident: (1) unexpectedness; (2) definiteness; and (3) force or impact. (Doc. 18-13 at 3.) The criteria are described as follows:

> (1) <u>Unexpectedness</u>: The disability must have been unlooked for and unforeseen; (2) <u>Definiteness</u>: The disability must be traceable to a definite time, place and occasion which occurred within the course of the mine worker's employment. A progressive disease does not meet

> this test and therefore cannot be a disability that resulted from a mine accident; (3) <u>Force or impact</u>: The disability must have been caused by the exertion or impact of some external physical force or object against the body or by the exertion <u>or</u> impact of the body against some external physical object; i.e., not simply as a result of the mine worker's own physical condition.

(*Id.*) Examples of circumstances in which a miner can be considered "disabled as the result of a mine accident" under Q&A 252 include when "a miner falls off a truck" and when "a miner injures his back lifting a heavy object in the normal course of his job." (*Id.*) For further elaboration as to whether a mine accident caused a total disability, Q&A 252 refers to Q&A 322, which was replaced by DP-1(81) in 1981. (*Id.* at 2; docs. 17 ¶¶ 23, 24; 15-3 at 3.)

DP-1(81) elaborates upon whether a mine worker meets the criteria for a disability pension if he is disabled by some combination of a mine accident and a non-mine accident. (*See* doc. 18-14.) It states:

> If a condition or injury resulting from a mine accident aggravates or combines with a pre-existing condition or prior injury which did not result from a mine accident and the mine worker thereby becomes totally disabled, the mine worker is considered "totally disabled as the result of a mine accident."

(*Id.*)

### C. Plaintiff's application for disability benefits, denials, and appeals

Plaintiff filed for SSDI benefits on March 9, 2017, citing multiple ruptured discs in his back, partial disability in his left arm, heart problems, high blood

pressure, and other conditions. (Doc. 15 ¶ 19.) On August 8, 2018, an SSA ALJ held a hearing and determined that Plaintiff was entitled to disability benefits. (*Id.* ¶ 34; doc. 27-2.) The ALJ listed DDD with stenosis, obesity, and hypertension as Plaintiff's "severe impairments" and explained that "[h]is main barrier to working is the back pain." (Doc. 18-10.) The ALJ concluded that Plaintiff had been disabled since February 22, 2017. (*Id.* ¶ 11.)

Having established his disability by the SSDI award, Plaintiff applied for disability pension benefits from UMWA on October 9, 2018. (Doc. 15 ¶ 37.) UMWA denied Plaintiff's application for benefits on February 20, 2020. (*Id.* ¶ 38; doc. 18-15.) A disability nurse analyst found that Plaintiff's medical records failed to show that the February 21, 2017, mine accident caused Plaintiff's SSDI impairments of DDD with stenosis, obesity, and hypertension. (Docs. 15 ¶ 38, 18-15 at 14–15.) Plaintiff appealed the denial, which was upheld on July 29, 2020. (Doc. 15 ¶ 39.) He appealed again and on November 11, 2021, UMWA again upheld the denial. (*Id.* ¶ 41.) The November 11 denial letter noted, among other things, that the January 5 incident "was not considered a mine accident because it did not meet the 'force or impact' criteria [of Q&A 252]. There was no exertion or impact of the body against some external physical object." (Doc. 27-6 at 4.)

UMWA reviewed Plaintiff's claim one final time on July 19, 2022, and denied it again, citing insufficient new evidence. (Doc. 15 ¶ 46.)

UMWA received Plaintiff's first ERISA document request on January 10, 2022. (*Id.* ¶ 42.) By February 1, UMWA had provided Plaintiff's pension file, medical records, and additional plan documents. (*Id.* ¶¶ 43, 44.) However, UMWA did not provide Plaintiff a copy of Q&A 252 until September 1, 2022, or a copy of DP-1(81) until December 16, 2022. (*Id.* ¶¶ 48, 49.)

## II.   STANDARD OF REVIEW

"In an ERISA case, the standard of review for summary judgment depends on whether the administrator had discretion to deny a claim." *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1311 (11th Cir. 2016); *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008).[3] The

---

[3]   Federal courts across circuits have waffled over the correct standard of review to apply in an ERISA case reviewed on a motion for summary judgment. *See, e.g., Leahy v. Raytheon Co.*, 315 F.3d 11, 17 (1st Cir. 2002) (noting that some courts "giv[e] lip service to the summary judgment standard but then proceed[] to examine the evidence under the arbitrary and capricious standard"); *Blankenship v. Metro. Life Ins. Co.*, 686 F. Supp. 2d 1227, 1232–33 (N.D. Ala. 2009), *amended* (Jan. 21, 2010), *rev'd in part*, 644 F.3d 1350 (11th Cir. 2011) (advocating for "a new procedural rule" for the disposition of ERISA cases). Many have noted the incompatibility of traditional summary judgment standards with the ERISA review standards as set forth by the Supreme Court in *Firestone. See, e.g., Leahy*, 315 F.3d at 17 ("To be sure, there is an obvious discongruence between the two standards."); *Crume v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006) (finding it "difficult to ascertain how the 'normal' summary judgment rules can sensible apply" in an ERISA case); *Blankenship*, 686 F. Supp. 2d at 1232 ("Rule 56 simply does not fit an ERISA case."); *Zorn v. Principal Life Ins. Co.*, No. CV 609-081, 2010 WL 3282982, at *5 (S.D. Ga. Aug. 18, 2010) (explaining that parties "present their information nominally through Rule 56 motions" but that "the Court will not use factual inferences in either

Supreme Court has held that a denial of pension benefits should be "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989); *Harris v. Lincoln Nat'l Life Ins. Co.*, 42 F.4th 1292, 1294 (11th Cir. 2022). If the plan grants its administrator discretionary authority, a denial of benefits is reviewed for an abuse of discretion. *Firestone*, 489 U.S. at 954; *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 912 (11th Cir. 1997) (equating "arbitrary and capricious" review with review for an abuse of discretion).

---

side's favor"); *Wilkens v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). This Court is unaware of any binding opinion which clearly outlines how or whether summary judgment standards should be applied in the context of an ERISA denial-of-benefits review. Even the Eleventh Circuit in *Alexandra*—which held that, "[i]n an ERISA case, the standard of review for summary judgment depends on whether the administrator had discretion to deny a claim"— first set forth the traditional summary judgment standard of review, i.e., "[s]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" 833 F.3d at 1306, 1311 (quoting Fed. R. Civ. P. Rule 56(a)). However, there is at least one published Eleventh Circuit opinion applying the ERISA standard of review without any reference to traditional summary judgment standards. *See Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1194–95 (11th Cir. 2010) (reviewing the district court's grant of summary judgment). Given the irreconcilability of the two standards, this Court concludes that Rule 56(a)'s standards are inapplicable to the extent that they conflict with the Supreme Court's instruction in *Firestone* and the Eleventh Circuit's subsequent interpretations. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008) ("Glazer argues that the district court erred when it granted summary judgment because there were factual disputes about whether Glazer was disabled, but this argument misunderstands our standard of review."); *Curran v. Kemper Nat. Servs., Inc.*, No. 04-14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005) (unpublished *per curiam*) (rejecting the argument that "the factual review standard applicable to summary-judgment review governs review and not the deferential review owed to the administrator in an ERISA case"); *see also Finch v. Hillshire Brands Co.*, 83 F. Supp. 3d 1211, 1213 n.4 (N.D. Ala. 2015) ("In ERISA cases, the usual summary judgment standard does not apply.").

In accordance with *Firestone*, the Eleventh Circuit applies a six-step analysis in reviewing a denial of benefits. Because some steps are inapplicable here, the six steps are condensed into three:

(1) Determine whether the decision to deny benefits was *de novo* wrong; if not, end the inquiry and affirm the decision.

(2) If the decision was *de novo* wrong, determine whether the administrator was given discretion to review claims; if not, end the inquiry and reverse the decision.

(3) If the decision was *de novo* wrong and the administrator had discretion to review claims, then determine whether reasonable grounds supported the decision to deny benefits; if not, end the inquiry and reverse the decision.

*Alexandra*, 833 F.3d at 1311–12.

A plan administrator's denial of benefits is *de novo* wrong if, after review, "the court disagrees with the administrator's decision." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1196 (11th Cir. 2010) (quoting *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004)). "In this circuit, a district court conducting a *de novo* review of an Administrator's benefits determination is not limited to the facts available to the Administrator at the time of the determination." *Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994).

## III.   DISCUSSION

In Count I, Plaintiff challenges UMWA's denial of his claim for disability pension benefits pursuant to 29 U.S.C. § 1132(a). In Count II, Plaintiff seeks statutory damages under 29 U.S.C. § 1132(c) for UMWA's alleged failure to timely provide certain required documents.

The crux of the Parties' benefits dispute is this. UMWA argues that the SSA ALJ determined that Plaintiff's DDD with stenosis, obesity, and hypertension caused him to become disabled; that Plaintiff's mine accidents did not and could not have caused those impairments; and therefore, Plaintiff is not entitled to disability benefits under the Plan. Plaintiff contends that the ALJ determined his back pain and limited range of motion caused him to become disabled; that the mine accidents aggravated or combined with his impairments to cause that disabling pain; and therefore, he is entitled to disability benefits under the Plan. As explained below, this Court concludes that UMWA's determination that Plaintiff was not entitled to disability benefits under the Plan was *de novo* wrong and, because it failed to provide a "full and fair review," it is treated as having made that determination without discretion. Accordingly, Plaintiff's motion is due to be **GRANTED** as to Count I and UMWA's motion is due to be **DENIED** as to Count I.

However, Plaintiff does not seek statutory penalties from a proper party. Accordingly, Plaintiff's motion is due to be **DENIED** as to Count II and UMWA's motion is due to be **GRANTED** as to Count II.

### A. The Trustees' denial of Plaintiff's claim for disability benefits was *de novo* wrong (Count I).

The 1974 Pension Plan provides a disability pension to qualifying participants who become "totally disabled as a result of a mine accident." (Doc. 18-12 at 7.) This requirement is met and a participant is entitled to disability benefits under the Plan if, by reason of a mine accident, the participant "is subsequently determined to be eligible for Social Security Disability Insurance." (Doc. 18-12 at 8.) Relevant here, UMWA has promulgated two official interpretive documents, Q&A 252 and DP-1(81), which govern whether participants qualify for disability benefits in certain circumstances. Those documents are binding upon the Trustees. (Doc. 18-12 at 40); 29 U.S.C. § 1104(a)(1)(A), (D) (requiring fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants" and "in accordance with the documents and instruments governing the plan"); *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (explaining that "ERISA provides no exemption" from the duty to act "in accordance with the documents and instruments governing the plan").

Q&A 252 governs whether an incident is considered a "mine accident." A "mine accident" requires (1) unexpectedness; (2) definiteness; and (3) force or impact. Only the third criterion is disputed with respect to the January 5, 2017, accident in this case. Under Q&A 252, "force or impact" means "the exertion or impact of some external physical force or object against the body" or "the exertion or impact of the body against some external physical object." (Doc. 18-13 at 3.) Examples include when "a miner falls off a truck" and when "a miner injures his back lifting a heavy object in the normal course of his job." (*Id.*) Q&A 252 also explains that "miners who become disabled by progressive diseases or conditions … cannot be considered 'disabled as the result of a mine accident.'" (*Id.*)

DP-1(81) clarifies whether a mine worker is considered "disabled as the result of a mine accident" when he suffers from both a mine accident and a pre-existing condition. (*See* doc. 18-14.) It states that if "a mine accident aggravates or combines with a pre-existing condition," then the mine worker is considered "totally disabled as the result of a mine accident." (*Id.*)

Accordingly, if Plaintiff was disabled by his DDD with stenosis, obesity, and hypertension—progressive diseases or conditions—then Q&A 252 instructs that he is not entitled to benefits. If, however, the 2017 mine accidents "aggravate[d] or combine[d] with" those conditions to cause his disability, then he is entitled to

benefits under DP-1(81). *See Sharp v. Trustees of UMWA 1974 Pension Tr.*, 441 F. Supp. 3d 680, 699 (C.D. Ill. 2020) (applying DP-1(81) in a case where the plaintiff had a preexisting back condition before being injured in a mine accident).

As a threshold issue, UMWA's determination that the January 5, 2017, accident was not a "mine accident" was patently erroneous. The November 11 denial letter from UMWA concluded that the January 5 incident "was not considered a mine accident because it did not meet the 'force or impact' criteria [of Q&A 252]. There was no exertion or impact of the body against some external physical object." (Doc. 27-6 at 4.) As Plaintiff described the incident, he was operating a motorcar when it hit a dip in the tracks, which "caused the car to throw [him] into the air" and "land[] forcefully and suddenly in a manner that caused serious injury."[4] (Doc. 27-3.) Plaintiff's characterizations aside, this Court cannot comprehend how the impact of Plaintiff's body against the motorcar could not be considered "the exertion or impact of the body against some external physical object." Given that the sole reason the January 5 incident was not considered a mine accident was because there was no force or impact—which there plainly was—this Court finds that the January 5, 2017, incident was a "mine accident"

---

[4]    Plaintiff's former co-worker, who was with him on January 5, corroborated this event. (Doc. 27-5.)

under the Plan.[5]

Turning now to the primary dispute between the Parties, this Court concludes that Plaintiff's progressive diseases or conditions were not the sole cause of his disability. In its opinion, the SSA ALJ identified Plaintiff's DDD with stenosis, obesity, and hypertension as "severe impairments." (Doc. 18-10 ¶ 3.) It next determined that those impairments, alone or combined, were insufficient to warrant a finding of disability.[6] (*See id.* ¶ 4.) In paragraph five of its opinion, the ALJ conducted the bulk of its analysis to determine Plaintiff's "residual functional capacity"; in paragraph six it determined that Plaintiff's limited residual functional capacity left him "unable to perform past relevant work." (*Id.* ¶¶ 5, 6.) Thus, the critical question is whether the 2017 mine accidents "aggravated or combined with" Plaintiff's impairments to cause his limited residual functional capacity. The answer is clear: yes, they did.

The ALJ determined that Plaintiff's "main barrier to working is the back

---

[5]     The Court notes that UMWA previously determined that a similar incident did satisfy the "force or impact" criterion. *See Green v. Holland*, No. 7:04CV1305VEH, 2005 WL 6133303, at *7 (N.D. Ala. Dec. 14, 2005), *aff'd*, 480 F.3d 1216 (11th Cir. 2007). In *Green*, the plaintiff claimed that "he was driving some mining equipment with bad shocks and that his back was injured 'instantly' when he hit a bump on his first run." The Trustees determined that the incident in that case was a "mine accident" under the Plan.

[6]      Federal regulations describe the SSA's process for determining the existence of a disability at this step: "If the … impairment(s) are equivalent in severity to those of a listed impairment, we will find you disabled. If … not, we will consider the impact of your symptoms on your residual functional capacity." 20 C.F.R. § 404.1529(d)(3); *see Oliver v. Aetna Life Ins. Co.*, 613 F. App'x 892, 898 (11th Cir. 2015) (explaining the five-step sequence that an ALJ follows in determining a claimant's eligibility for long-term disability benefits).

pain." (*Id.* ¶ 5.) In making that determination, the ALJ discussed both the January 5 and the February 21 mine accidents. Regarding the latter, the ALJ's opinion notes that Plaintiff "presented to the emergency room with *exacerbated back pain* after lifting a 50-pound bag" and that by March 27, Plaintiff still "had not returned to work" due to "marked pain with any range of motion or walking." (*Id.* (emphasis added).) The opinion went on to describe the effects of Plaintiff's back pain on his residual functional capacity, finding the pain "limit[s] him to sedentary work as heavy lifting and carrying and prolonged standing and walking may exacerbate his back pain." This analysis confirms that Plaintiff's back pain caused him to become disabled, and that the mine accidents at least "aggravated or combined with" Plaintiff's impairments to cause that debilitating back pain. Therefore, Plaintiff is entitled to disability benefits under the terms of the 1974 Pension Plan. *See Sharp*, 441 F. Supp. 3d at 699 ("Plaintiff need only show that the injury from his December 2003 mine accident aggravated or combined with his preexisting back condition, thereby rendering him totally disabled."); *Odom v. United Mine Workers of Am. Health & Ret. Funds*, 687 F.2d 843, 847 (6th Cir. 1982) ("The question is whether the accident contributed in some part to the disability of appellant.").

This conclusion is bolstered by the ALJ's determination that Plaintiff was disabled as of February 22, 2017—the day after the February 21 mine accident. *See*

*Horn v. Mullins*, 650 F.2d 35, 37 (4th Cir. 1981) (finding the "critical factor" to be "the date of disability determined by the ALJ," which was "within forty-eight hours of the mine accident"). It is undisputed that Plaintiff's pain was not disabling immediately before the February 21 mine accident and that his pain was disabling immediately after the mine accident. Absent some convincing alternative explanation for this timing, it appears undeniable that the February 21 mine accident contributed to Plaintiff's disability. *See id.* ("Clearly the total disability on October 20 occurred as a result of the mine accident on October 18."). UMWA's explanation is unconvincing. It argues that February 22 was selected as Plaintiff's disability onset date merely because that was his last day of work. Of course, he stopped working because he was disabled by back pain, and the mine accident exacerbated his back pain. (*See* doc. 18-10 at 3 (ALJ noting that Plaintiff "presented to the emergency room with exacerbated back pain after lifting a 50-pound bag" and thereafter "stopped working due to exacerbated back pain").) Therefore, UMWA's explanation fails to rebut the conclusion that the February 21 mine accident caused Plaintiff to become disabled on February 22.

UMWA also argues that "[t]here is no evidence to demonstrate that the pain Mr. Shanklin was suffering from was anything other than the product of a progressive, degenerative disease." (Doc. 15 at 25.) There is evidence. First, the

timing of the February 21 mine accident is itself evidence that the accident exacerbated Plaintiff's pain and caused him to become disabled the next day. *See Horn*, 650 F.2d at 37. Second, the fact that Plaintiff never missed work due to his chronic back pain except immediately following the two mine accidents demonstrates that injuries from those accidents exacerbated his pain. *See Sharp*, 441 F. Supp. 3d at 701 (noting that UMWA "fail[ed] to give any weight to the fact that Plaintiff's back condition never prevented Plaintiff from working" prior to the mine accident); *see also Robertson v. Connors*, 848 F.2d 472, 476 (4th Cir. 1988) ("Importantly, however, prior to the mine accident, his manifestations of pain did not prevent his return to work."). Third, Dr. Brasfield noted that he "had been treating for [Plaintiff's] back pain previously" but that "[t]his [wa]s a new injury exacerbating that problem." (Doc. 27-7 at 5.) And fourth, the frequency with which Plaintiff sought medical treatment for his back pain increased significantly after the 2017 mine accidents. The Court finds this evidence sufficient to establish that the mine accidents exacerbated Plaintiff's back pain.[7]

UMWA maintains that Plaintiff is not entitled to benefits because the mine accidents did not and could not have caused his progressive conditions. As this Court has explained, that analysis is insufficient because it fails to address whether

---

[7]    This finding is unchanged by the fact that Plaintiff once reported his pain level at ten out of ten before the mine accidents occurred, given the imprecise nature of such self-assessments.

the mine accidents aggravated or combined with Plaintiff's progressive conditions to cause his debilitating back pain, therefore entitling him to benefits under DP-1(81). *See Sharp*, 441 F. Supp. 3d at 703–04 (noting that UMWA "appl[ied] the wrong causation standard to Plaintiff's application for disability benefits," and finding its causation analysis unreasonable where the plaintiff's "mine accident aggravated his preexisting back condition and, eventually, rendered him disabled").

The opinions UMWA cites do little to strengthen its position. For example, UMWA quotes *McCoy v. Holland* for the proposition that "degenerative disc disease cannot be proximately caused by a mine injury for purposes of the UMWA 1974 Pension Plan." 364 F.3d 166, 172 (4th Cir. 2004). However, *McCoy* also states, "[w]hen a progressive disease combines with a mine accident to proximately cause a claimant's Qualifying Disability, however, the claimant is eligible for a disability pension." *Id*. at 171. Here, Plaintiff does not claim that a mine injury caused his DDD; he claims that a mine injury combined with his DDD to cause disabling pain. Moreover, although the Trustees' denial of benefits was found to be reasonable in *McCoy*, the court in that case explicitly noted the "substantial lapse of time between the mine accident and McCoy's initial complaints of debilitating pain," which was "more than two years after the mine accident." *Id*. In Plaintiff's case, there was no such substantial lapse of time.

Other opinions cited by UMWA are similarly unsupportive and readily distinguishable. Most involved a disability date years removed from any mine accident, substantial non-mining accidents, or both. *See, e.g.*, *Whitt v. Mullins*, 793 F.2d 1294 (6th Cir. 1986) (motorcycle accident and sixteen-month gap between mine accident and disability); *Stepp v. Holland*, No. CIV.A. 5:04-CV-01062, 2005 WL 3088384 (S.D.W. Va. Nov. 17, 2005) (five-year gap between mine accident and disability date); *Pacconi v. Trustees of United Mine Workers of Am., Health & Ret. Fund of 1974*, No. 2:05CV1488, 2006 WL 3064106 (W.D. Pa. Oct. 26, 2006) (motor vehicle accident and four-year gap between mine accident and disability); *Reynolds v. UMWA Health & Ret. Funds*, No. CIV.A. 3:11-0202, 2011 WL 3843867 (S.D.W. Va. Aug. 29, 2011) (multiple motor vehicle accidents, a gunshot wound, and three years between mine accident and disability).

Cited by both parties, *Green* is noteworthy for its factual similarities to the present case.[8] *See Green v. Holland*, No. 7:04CV1305VEH, 2005 WL 6133303 (N.D. Ala. Dec. 14, 2005), *aff'd*, 480 F.3d 1216 (11th Cir. 2007). Here, as in *Green*, Plaintiff suffers from DDD with recurring back pain. *Id.* at *4–5. Both claimants injured their backs in mine accidents. *Id.* at *4. In both cases, UMWA initially

---

[8]     The controversy between the parties in *Green* was over unpaid interest rather than a denial of benefits; the holdings are therefore of little consequence here. Nonetheless, UMWA's decision to award benefits to the claimant in that case is notable given the strikingly similar factual circumstances to this case, as well as certain distinctions.

denied disability benefits on the basis that DDD is a progressive disease that does not result from a mine accident. *Id.* at *6. In *Green*, there was a three-year gap between the mine accident and the disability onset date. *Id.* at *7. Here, by contrast, Plaintiff became disabled less than two months after his first mine accident and immediately following his second mine accident. The claimant in *Green* did not seek medical treatment for a month and a half after his accident, whereas Plaintiff went to the emergency room the day after each accident. *Id.* at *5. Nevertheless, UMWA eventually found that the mine accident "substantially contributed" to the claimant's disability in *Green*. *Id.* at *7. Yet here, UMWA holds fast to its argument that a mine accident cannot cause DDD and neglects to apply DP-1(81)'s "aggravated or combined with" causation standard to Plaintiff's claim for benefits.

For the foregoing reasons, this Court disagrees with UMWA's decision to deny Plaintiff's claim for disability benefits. Accordingly, UMWA's decision was *de novo* wrong. *Capone*, 592 F.3d at 1196. Next, the Court determines whether the Plan administrators were vested with discretion to determine Plaintiff's eligibility for benefits and, if so, whether their decision was reasonable (i.e., not arbitrary or capricious). *Hunt*, 119 F.3d at 912.

**B. The Trustees did not have discretion because they failed to provide Plaintiff with a "full and fair review" (Count I).**

There is no question that the 1974 Pension Plan grants the Trustees discretionary authority "as to all issues concerning eligibility for benefits." (Doc. 18-12 at 40.) This grant of discretionary authority ordinarily requires courts to give deference to UMWA's eligibility determinations. *See Hale v. United Mine Workers Health and Retirement Funds*, 23 F.3d 899, 901 (4th Cir. 1994) ("It is well-established that the abuse of discretion standard under [*Firestone*] is applicable to our review of the Trustees' decisions under the UMWA pension plans." (citing *Lockhart v. United Mine Workers 1974 Pension Trust*, 5 F.3d 74, 77 (4th Cir.1993))); *Baker v. UMWA Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). However, Plaintiff argues that UMWA's decision is not entitled to deference in this case because it violated applicable regulations and failed to provide him with a full and fair review. *See* 29 U.S.C. § 1133 (obligating plan administrators to provide claimants with a "full and fair review" "[i]n accordance with regulations of the Secretary"); *Firestone*, 489 U.S. at 113 (citing § 1133(2)).

The Eleventh Circuit has "never addressed the effect of substantial noncompliance with ERISA procedural regulations on the deference owed to a plan administrator's adverse benefits determination." *O.D. v. Jones Lang Lasalle Med. PPO Plus Plan*, 772 F. App'x 800, 805 (11th Cir. 2019). However, federal regulations now provide that if a disability benefits plan "fails to *strictly* adhere to

all the requirements of [29 C.F.R. § 2560.503-1] with respect to a claim," then "the claim or appeal is *deemed denied on review without the exercise of discretion* by an appropriate fiduciary."[9] 29 C.F.R. § 2560.503-1(l)(2)(i) (emphasis added). As other courts interpreting this provision have held, "a plan administrator's failure to comply with *any* of the regulations set forth in 29 C.F.R. § 2560.503–1 requires a federal court reviewing the benefits determination to apply a *de novo* standard of review to that determination." *Stewart v. Hartford Life & Accident Ins. Co.*, No. 2:17-CV-01423-KOB, 2021 WL 1816961, at *14 (N.D. Ala. May 6, 2021), *aff'd*, 43 F.4th 1251 (11th Cir. 2022) (citing *McConnell v. Am. Gen. Life Ins. Co.*, 434 F. Supp. 3d 1285, 1289 (S.D. Ala. 2020) (discussing Eleventh Circuit precedent and concluding that *de novo* review applies if ERISA procedural safeguards are violated)) (emphasis in original); *Davis v. United of Omaha Life Ins. Co.*, No. 6:23-CV-57-ACA, 2023 WL 6849438, at *3 (N.D. Ala. Oct. 17, 2023); *accord Halo v. Yale Health Plan*, 819 F.3d 42, 50–58 (2d Cir. 2016); *see also Stefansson v. Equitable Life Assur. Soc'y of U.S.*, No. 5:04CV40(DF), 2005 WL 2277486, at *12 (M.D. Ga. Sept. 19, 2005) ("[A]pplying a deferential standard of review to a claim deemed

---

[9]     This language first appeared in the 2017 version of 29 C.F.R. § 2560.503-1. *See* Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92316-01, 92327–28 (Dec. 19, 2016). Accordingly, cases interpreting prior versions of the regulation are not controlling. *See, e.g.*, *White v. Coca-Cola Co.*, 542 F.3d 848, 855–56 (11th Cir. 2008) (declining to adopt the "broad position" that the failure to comply with ERISA's procedural safeguards permits courts to review the decisions of an administrator without deference).

denied by operation of law would be inconsistent with Supreme Court precedent establishing *de novo* as the default standard of review under ERISA.").

A "full and fair review" requires plan fiduciaries to "take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv). Plan fiduciaries must also provide "the specific internal rules, guidelines, protocols, standards or other similar criteria of the plan relied upon in making the adverse determination or, alternatively, a statement that such rules, guidelines, protocols, standards or other similar criteria of the plan do not exist." *Id.* § 2560.503-1(g)(1)(vii)(C), (j)(6)(iii). Similarly, the plan administrator must afford the claimant "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." *Id.* § 2560.503-1(j)(3). "Relevant" documents include anything that was "considered … in the course of making the benefit determination" and any "statement of policy or guidance with respect to the plan … without regard to whether such advice or statement was relied upon in making the benefit determination." *Id.* § 2560.503-1(m)(8); *see* Claims Procedure for Plans Providing Disability Benefits, 81 FR 92316-01, 92323 (Dec. 19, 2016) (expressing the Department of Labor's interpretation

that plans must produce "all the internal rules, guidelines, protocols, standards or other similar criteria concerning the denied claim that were or should have been considered in deciding the claim"). Both Q&A 252 and DP-1(81) are "relevant" documents under § 2560.503-1(m)(8).

Plaintiff argues correctly that UMWA failed to provide a "full and fair review" because (1) it failed to consider and apply DP-1(81) to his claim for benefits and (2) it did not produce Q&A 252 or DP-1(81) until more than seventh months after Plaintiff first requested relevant ERISA documents.[10] *See Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 798 (7th Cir. 2009) ("[A] participant who is denied access to internal guidelines that relate to her unsuccessful claim for benefits may be able to show that she was denied full and fair review of the denial by the claims administrator."). First, it is clear from the evidence that UMWA failed to consider and apply DP-1(81) to Plaintiff's claim for benefits.[11] Indeed, it appears that the fiduciary responsible for reviewing Plaintiff's denials and appeals was unaware that DP-1(81) even existed. (Doc. 18-26 at 11 ("I've been here for 17

---

[10]    Plaintiff also contends that UMWA failed to provide a "full and fair review" because it treated him differently than other similarly situated claimants and because the same fiduciary reviewed multiple denials. Because this Court resolves this issue on other grounds, it does not address these arguments.

[11]    Not only did the analyses in UMWA's denials fail to apply DP-1(81)'s causation standard, they did not even reference DP-1(81), despite the fact that training materials explicitly instruct that any denial "should cite the specific Plan provisions or policy statements [e.g., Q&A 252, DP-1(2)(81)] considered." (Doc. 37 at 2125 (brackets in original)).

years" and "I've never seen that written policy.").) Second, it is undisputed that Plaintiff first requested relevant ERISA documents on January 10, 2022, and that UMWA did not provide Q&A 252 and DP-1(81) until September 1 and December 16, 2022, respectively. Notably, UMWA did not provide these documents until after Plaintiff's final appeal on June 29 and after he sued in federal court. There is little doubt that UMWA thus failed to provide "reasonable access to" information relevant to Plaintiff's claim for benefits. 29 C.F.R. § 2560.503-1(j)(3); *see, e.g.,* *Kallaus v. Nationwide Death Benefit Plan*, No. 2:09-CV-0899, 2010 WL 11635705, at *12 (S.D. Ohio Nov. 3, 2010) (finding that providing documents a week before the claimant's deadline to appeal did not constitute "reasonable access" to those documents). The consequence of these failures is that Plaintiff's claim for benefits is deemed to have been denied "without the exercise of discretion by an appropriate fiduciary," 29 C.F.R. § 2560.503-1(l)(2)(i), and that denial is therefore subject to *de novo* review. *Firestone*, 489 U.S. at 113; *Brewer v. Unum Grp. Corp.*, 622 F. Supp. 3d 1113, 1117 (N.D. Ala. 2022) (recognizing "the new regulatory provision that forces the Court to … strip[] [the plan administrator] of its discretionary authority" and "reverts us back to the baseline standard of de novo review").

The opinions UMWA cites to the contrary are inapposite. For example, it cites an unpublished opinion from the Eleventh Circuit as holding that a plaintiff is

not entitled to interpretive Q&As unless he first demonstrates how they would aid him in establishing the necessary causal connection between his work-related injuries and his disability. (*See* doc. 15 at 27 (citing *Wayton v. United Mine Workers of Am. Health & Ret. Funds*, 568 F. App'x 738, 743 (11th Cir. 2014)).) That case addressed the plaintiff's motion for a continuance to allow more time for discovery; it did not address any alleged failure by the defendant to provide required documents under 29 C.F.R. § 2560.503-1. *See Wayton*, 468 F. App'x at 741. Moreover, in addition to interpretive Q&As, the plaintiff sought "the redacted files of similarly situated pensioners." *Id.* at 742–43. The court's holding was narrow: the district court did not abuse its discretion in denying the plaintiff's motion for a continuance. *Id.*

Having determined that UMWA's decision was *de novo* wrong and not entitled to deference, the proper course is to "end judicial inquiry and reverse the decision." *Alexandra*, 833 F.3d at 1311. Accordingly, Plaintiff's motion for summary judgment as to Count I is due to be **GRANTED** and UMWA's motion as to Count I is due to be **DENIED**.

## C. The Trustee's denial of Plaintiff's claim was unreasonable (i.e., arbitrary and capricious) (Count I).

The Court writes briefly to note that, even under the arbitrary and capricious standard, UMWA's determination was unreasonable. This conclusion follows

UMWA's failure to provide a "full and fair review" and its apparent failure to consider or apply DP-1(81)'s causation standard to Plaintiff's claim. *See Helms v. Gen. Dynamics Corp.*, 222 F. App'x 821, 830 (11th Cir. 2007) ("No reasonable interpretation of the plan allows Aetna simply to ignore the substance of its own [policies]."); *Capone*, 592 F.3d at 200 (finding for the claimant where the insurer "failed to adequately address the issues raised in [the claimant's] appeal and the denial of benefits"); *accord White v. Life Ins. Co. of N.A.*, 892 F.3d 762, 770 n.2 (5th Cir. 2018) ("We acknowledge that the denial of a 'full and fair review' is, in itself, an independent basis to overturn a plan administrator's denial of benefits."). UMWA's failure to discuss DP-1(81) in denying Plaintiff's claim for benefits is amplified by the fact that Plaintiff quoted the language of DP-1(81) in his June 29, 2022, argument on appeal. (Docs. 18-17 at 3–4, 18-18); *see Sharp*, 441 F. Supp. 3d at 699 (finding UMWA's failure to apply DP-1(81)'s causation standard "unreasonable and an abuse of discretion"); 29 C.F.R. § 2560.503-1(h)(2)(iv) (requiring plan fiduciaries to "take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination"); *see also* Claims Procedure for Plans Providing Disability Benefits, 81 FR 92316-01, 92323 (Dec. 19, 2016) ("[I]t would present

substantial questions about whether the plan or claims adjudicator complied with ERISA's fiduciary standards if a claim was denied without the claims adjudicator having considered a rule, guideline, protocol or standard that was intended to govern the determination of the claim.").

UMWA's assertions to the contrary are not persuasive. UMWA quotes *Chicarelli v. UMWA Health and Retirement Funds*, 943 F.2d 457, 458 (4th Cir. 1991), as stating that "a determination as to whether a mine accident caused an SSDI disability lay within the Fund's discretion." (Doc. 15 at 19.) That is not what that case says. It explains that the Fund in that case acted within its discretion when it determined that, on appeal, the claimant had abandoned a certain theory possibly supporting his claim for benefits. *See Chicarelli*, 943 F.2d at 458. Regardless, UMWA's assertions do not address its failure to provide reasonable access to Q&A 252 and DP-1(81) or to discuss DP-1(81) in its denials of Plaintiff's claims.

### D. A claim for statutory penalties may be brought against administrators but not the Plan itself (Count II).

In Count II, Plaintiff seeks statutory penalties under 29 U.S.C. § 1132(c) for UMWA's failure to timely provide Q&A 252 and DP-1(81). Section 1132(c) requires plan administrators to furnish certain documents upon request, "within 30 days after such request." *Id.* § 1132(c)(1). An administrator's failure to comply

with the statute gives the court discretion to hold that administrator personally liable for damages in the amount of up to $110 per day. *Id.*; 29 C.F.R. § 2575.502c–1; *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1270 (11th Cir. 2008). "[B]ecause § 1132(c) imposes penalties, it must be strictly and narrowly construed." *Williamson v. Travelport, LP*, 953 F.3d 1278, 1293 (11th Cir. 2020).

A plan administrator is "the person [or company] specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i); *see Hunt*, 119 F.3d at 915. Plaintiff names the Pension Plan as a defendant in this action but does not name its administrators. Construing § 1132(c) "strictly and narrowly," Plaintiff has failed to name a proper party against whom the statutory penalty may be imposed. *Williamson*, 953 F.3d at 1293; *Hunt*, 119 F.3d at 915; *see Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993) (reasoning that the statutory penalty is intended to punish the noncomplying administrator).

Assuming *arguendo* that Plaintiff could seek statutory penalties from the Plan itself and that he was entitled to such damages, this Court would decline to exercise its discretion to impose such penalties. In his response to UMWA's motion for summary judgment, Plaintiff states:

> Shanklin would prefer the court to consider UMWA's failure to identify, consider, or produce [Q&A 252 and DP-1(81)] as a failure to

provide a full and fair review. Finding UMWA waived its discretionary authority via its procedural and fairness violations is a simpler and more direct means of resolving the issues presented in this case, even if UMWA should also be subject to statutory document fines as well.

(Doc. 26 at 33.) So stated, the Court finds no reason to impose penalties.

Accordingly, Plaintiff's motion for summary judgment is due to be **DENIED** as to Count II and UMWA's motion is due to be **GRANTED** as to Count II.

## IV.   Conclusion

For the foregoing reasons, UMWA's Motion for Summary Judgment (doc. 14) is due to be **DENIED** as to Count I and **GRANTED** as to Count II. Plaintiff's Motion for Summary Judgment (doc. 17) is due to be **GRANTED** as to Count I and **DENIED** as to Count II. The Court will enter an Order consistent with this Opinion.

**DONE** and **ORDERED** on December 6, 2023.

_____
L. Scott Coogler
United States District Judge

215647